PRES'T, &c. MIDDLESEX BANK *versus* FREDERIC A. BUT-
MAN & *al.*

If it appears by the record of a judgment rendered in another State, that
the Court had no jurisdiction of the parties, such judgment will not be re-
ceived here as having any force or validity whatever.

Thus, where it appeared that an action had been brought upon a note before
a Court of another State, and a judgment rendered in the suit, but where
the defendant had never been an inhabitant of that State, and no personal
service had been made upon him, and none of his property had been at-
tached, it was holden, that the record of such judgment was not sufficient,
when offered in evidence by the defendant, to defeat an action of assumpsit
brought upon the same note in this State.

ASSUMPSIT upon a promissory note. The plaintiffs produc-
ed, proved and read the note.

The defendants produced and read a copy of a judgment
rendered thereon in the Court of Common Pleas, in the county
of Middlesex and Commonwealth of Massachusetts, and con-
tended that the suit could not be maintained upon the note.
The return of the officer who served the writ was as follows:—

" Worcester, ss. May 29, 1841.— By virtue of this writ I at-
tached a chip as the property of the within named defendants,
and on the same day I summoned each of them to appear at
court by giving summons to Col. Isaac Davis, their attorney,
who did not acknowledge that he was their general agent, but
said he was acting as special attorney for F. A. Butman. I
further certify, that this was the only service that I could make,
the defendants having removed from this State when they
were minors and not having resided in it since, to my knowl-
edge, and the house they formerly lived in with their father,
has been taken down, and there is not at present any buildings
on the premises.        Ivers Phillips, Dep. Sheriff."

A nonsuit or default was to be entered, as the Court should
direct.

*Rowe* argued for the plaintiffs. The defendants introduced
a paper, he said, called by them a judgment, and say, that we
cannot maintain the suit; not because the note was without
consideration, or had been paid, but because it had been merg-

ed in the judgment. If we had brought debt upon the judgment, it would have been said, truly, that the alleged judgment was a mere nullity, and could not be the foundation of an action.

The defendants at the time of the commencement of the suit were not inhabitants of Massachusetts, and never had been, nor were they or their property found there. The Court there had no jurisdiction, and their proceedings are void. 9 Mass. R. 364; 4 Metc. 337; 5 Wend. 148; 4 Peters, 466.

*Kent* and *Kelley* argued for the defendants, contending, that this was a valid judgment in Massachusetts, and good every where, until reversed.

The question, they said, was not whether the defendants could avoid the judgment for want of jurisdiction in the Court, but whether the plaintiffs, after having selected their own tribunal and recovered a judgment upon the note, can now treat that judgment as a nullity, and maintain a suit upon the note. They cited 4 Metc. 337; 18 Pick. 393; 3 Cowen, 120.

The opinion of the Court, SHEPLEY, TENNEY and WELLS Justices, was drawn up by

TENNEY J. — This suit, which is on a note of hand, is defended upon the ground, that the cause of action is already merged in a judgment obtained in the county of Middlesex and Commonwealth of Massachusetts, and in support of the position taken by the defendants, they invoke the constitution of the United States, art. 4, sect. 1, and the act of Congress under the authority thus conferred upon them, of May 26, 1790; 1 U. S. Laws, chap. 38. By the section in the constitution relied upon, " full faith and credit shall be given in each State, to the public acts, records and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." The act of Congress provides that records and judicial proceedings authenticated as is prescribed therein, " shall have such faith and credit given to them, in every court within the United

States, as they have by law or usage, in the courts of the States, from whence the said records are or shall be taken."

The section of the constitution and the act of Congress, referred to, have been the subject of much discussion in the courts of the United States and in several of the individual States, and the opinions touching the true construction thereof have not in all respects been uniform.

A judgment rendered in the same jurisdiction with the court called upon to enforce it, while unsatisfied and in force, is considered and observed as conclusive proof of the debt, liable to no exception or inquiry. But a foreign judgment, though sufficient evidence of a debt or promise, *prima facie*, yet it is not incontrovertible proof. Doug. 6. "If an action of debt be sued on any such judgment, *nil debet* is the general issue, or if it be made the consideration of a promise, the general issue is *non assumpsit*." On these issues the defendant may impeach the justice of the judgment, by evidence relative to that point. On these issues, the defendant may also, by proper evidence, prove that the judgment was rendered by a foreign court, which had no jurisdiction ; and if his evidence be sufficient for the purpose, he has no occasion to impeach the justice of the judgment." 9 Mass. R. 462.

In the case of *Noble v. Gold*, decided in the county of Berkshire, and referred to in 1 Mass. R. 410, which was an action of debt on a judgment recovered in the State of Vermont, and to which the defendant pleaded *nil debet*, the court held the plea bad on general demurrer, and that by the constitution and laws of United States, the judgments of courts of record of the several States were placed in all respects upon the same footing with our own domestic judgments.

In *Bartlett* v. *Knight*, 1 Mass. R. 401, SEWALL J. remarks, in giving his opinion, "that the effect of a judgment, that is, the rights of the party claiming under it, and the liability of the party charged by it, are not enlarged or affected by the constitution or law of the United States," and he holds that the section cited from the constitution, and the act of Congress pursuant to it, are confined to the sole purpose of directing the

modes of proof and the effect thereof, to be employed in authenticating records, when certified from one State to another, and concludes, that a judgment certified from a court of record in any other State, when demanded as a debt within this State, is not an incontrovertible proof of such debt; and that the grounds of such judgment, when impeached by the defendant, may be on that occasion examined." In the same case, SEDGWICK Justice, in speaking of the constitution and act of Congress and the legitimate effect of judgments of another State, says, "The meaning, I take to be this and no more, that they shall be incontrovertible and conclusive evidence of their own existence, and of all the facts expressed in them. The *act* however stops short of declaring, what shall be their effect, and Congress have wisely left this to the judicial department." "I am decidedly of the opinion, that it would be going too far, to say that a judgment of one of the other States should in all cases, have the same effect as a domestic judgment." "The return of an officer of summons left with the defendant's agent or attorney, or at the last and usual place of the defendant's abode, is sufficient authority to the Court to proceed to judgment. An officer may be mistaken, he may act by collusion, notice may never have reached the defendant; that defendant may have been an inhabitant of a most distant State. Shall he be bound by the judgment conclusively? It would be monstrous." The decision of the court was in accordance with these views.

In the year 1813, the subject was again brought before the court in Massachusetts, and an elaborate opinion, drawn by PARSONS C. J. was pronounced as the decision of a majority of the court, in which it was held, "if a court of any State, should render judgment against a man not within the State nor bound by its laws, nor amenable to the jurisdiction of its courts, and if that judgment should be produced in any other State against the defendant, the jurisdiction of the court might be inquired into, and if a want of jurisdiction appeared, no credit would be given to the judgment. In order to entitle the judgment rendered in any court of the United States, to

the full faith and credit mentioned in the Federal Constitution, the court must have had jurisdiction not only of the cause, but of the parties." And it was decided, that judgments rendered in any other States, when offered as foundations of actions, are not treated as foreign judgments, the merits of which as well as the jurisdiction of the courts which rendered them may be inquired into; but they are not considered as they would be, if rendered in the same State in which they are offered, because the jurisdiction of courts from which they came may be the subject of inquiry, and if the jurisdiction is manifest they are entitled to full faith and credit; they may be declared on as evidence of debt or promises; and on the general issue, the jurisdiction of the courts rendering the judgments, are put in issue, but not the merits of the judgments. SEWALL J. adhered to the opinion expressed in *Bartlett* v. *Knight*, that the merits as well as the jurisdiction of the court, was a subject which might be examined.

The doctrines of the case of *Bissell* v. *Briggs*, were supposed soon after, to be in conflict in some respects with the decision of the Supreme Court of the United States, in *Mills* v. *Durgee*, 7 Cranch, 481, and also with *Hampton* v. *McConnel*, 3 Wheaton, 234. In *Mills* v. *Durgee*, Story, in the opinion of the Court, says, "In the present case, the defendant had full notice of the suit, for he was arrested and gave bail, and it is beyond all doubt, that the judgment of the Supreme Court of New York was conclusive upon the parties in that State. It must, therefore, be conclusive here." This seemed to be understood as giving to judgments of the courts of other States the same effect in all respects, as would be given to them, if they were judgments of the State where they were sought to be enforced; that is, that they were incontrovertible, as appears from the remarks of the court in the case of the *Commonwealth* v. *Green*, 17 Mass. R. 415. But such a conclusion cannot be drawn from the opinion without qualification, as the case was one where the court in New York, which rendered the judgment, had jurisdiction of the parties. Judge Johnson, who dissented from the majority of the Court, did not consider

the decision itself as going to such an extent, but apprehended that the reasoning of the opinion would lead almost necessarily to it; that receiving the plea of *nul tiel record* in an action of debt in another State, upon a judgment of another State of the Union, instead of *nil debet*, might at some future time involve the Court in inextricable difficulty; he alludes to the case of *Holker* v. *Parker*, which had been before the court, where a judgment of $150,000 was given in Pennsylvania, upon an attachment levied on a cask of wine and debt in judgment brought on that judgment in Massachusetts; and says, " Now in this action, if *nul tiel record* must necessarily be pleaded, it would be difficult to find a method, by which the enforcing of such a judgment could be avoided. Instead then, of promoting the object of the constitution, by removing all cause for State jealousies, nothing could tend more to enforce them than by enforcing such a judgment. There are certain eternal principles of justice which never ought to be dispensed with, and which courts of justice never can dispense with, but when compelled by positive statute. One of them is, that jurisdiction cannot be justly exercised over property not within the reach of its process, or over persons not owing them allegiance, or not subjected to their jurisdiction, by being found within their limits."

It is believed, that whenever the question was directly presented for decision in Massachusetts, prior to the separation of this State therefrom, since the case of *Bissell* v. *Briggs*, that decision has been regarded as having settled the law on a basis which was not to be shaken. In our own State, the doctrine has been recognized as firmly established. *Hall & al.* v. *Williams*, 1 Fairf. 278. In the opinion of the court, delivered by Parris Justice, after supposing the case of a judgment of a court of another State being amended by the same court, by inserting therein as a debtor, the name of a person who neither resided or had any property in that State, who had no notice of the suit, and never submitted to the jurisdiction of the court, remarks, " could we be called upon to enforce such a judgment against the new party? Should we listen to the suggestion

that, the judgment was binding in Georgia, because the highest court of judicature there, had so adjudged it, and therefore, under the law of the United States, it was binding here and in every other State of the Union." "In the case supposed, we should not hesitate to pronounce the judgment utterly void, a mere nullity and not deserving the name of judgment, an attempt to subvert the first principles of justice, and the power of this Court would be invoked in vain to carry it into execution."

Since we became an independent State, the courts of Massachusetts have frequently had before them cases involving the same questions, and they have uniformly adhered to the construction, given to the constitution and the act of 1790, in *Bissell* v. *Briggs,* with increased confidence, if possible, in its soundness. In *Hall & al.* v. *Williams & al.* 6 Pick. 232, it was held, if notice to or appearance of the plaintiff is not alleged in the record, he may avoid the effect of the judgment, in another State, than that where it was rendered, by showing that he was not within the jurisdiction of the court, and where it appears by the record itself, that there was no appearance and no notice, which he was bound to attend to, the judgment against him is a dead letter beyond the territory in which it was pronounced.

The same subject was before the court in *Gleason* v. *Dodd, adm'r,* 4 Mctc. 333, and the same doctrine reaffirmed.

In *Hitchcock* v. *Fitch,* 1 Caines, 460, a majority of the court held, that a judgment rendered in another State, upon a regular service of process and by a verdict of a jury, was only *prima facie* evidence of a debt. LIVINGSTON Justice, with one other of the five members of the court, dissented, giving the construction to the constitution and the act of Congress, that such judgments had greater authority in other States than it was believed by the majority, they possessed. He remarks, " Now no violence is done to my understanding of this article, in saying that it does not embrace a judgment which has been rendered against a party to whom no opportunity was afforded of controverting his adversary's demand, and who instead of be-

ing defended by himself or by counsel of his own choice, had no other representative, than an old blanket or a log of wood. A sentence thus obtained, in defiance of the maxim, *audi alteram partem*, deserves not the name of judgment." That the debtor in a judgment of another State, has a right to examine into the question of jurisdiction of the court, who rendered it, is fully established in New York, 4 Cowen, 292, and in several of the other States of the Union. 4 Conn. R. 380; 1 N. H. Rep. 246; Penn. Rep. 405; Hardin's Rep. 413.

By the records of the court of common pleas of the Commonwealth of Massachusetts, holden in the county of Middlesex, it appears, that on the 27th day of May, A. D. 1841, a writ issued from the clerk's office, in that county, in the name of the present plaintiffs against the present defendants, in which the latter are represented to be of Dixmont in the State of Maine, and both late of Worcester in the county. of Worcester, the declaration of which writ was upon the note declared upon in the present suit. On the 29th day of the same May, a deputy sheriff of the county of Worcester returned thereon, that he had attached a chip and summoned each of the defendants to appear at court, by giving a summons to Col. Isaac Davis, their attorney, who did not acknowledge that he was their general agent, but said he was acting as special attorney for F. A. Butman; that this was the only service he could make, the defendants having removed from the State when they were minors and not having resided in it since, to the knowledge of the officer, and the house, in which they formerly lived with their father having been taken down, and there being no buildings on the premises. The action was entered at the court to which the writ was made returnable. At the term of the same court, holden in December, A. D. 1841, it appearing to the court by the suggestion of the plaintiffs, that the defendants were out of the Commonwealth at the time of the service of the writ, it was ordered that further notice be given to the defendants of the pendency of the action, by the publication of the order in a newspaper in Boston, in the manner set out in the order; and by an affidavit, making also a part of the record,

that the order had been executed ; and at the term held in March, A. D. 1842, the court rendered judgment in the same action, and execution was afterwards issued, and returned without satisfaction.    There is no evidence, that the defendants had personal notice of the suit, resided in that Commonwealth after the issuing of the writ, or made any appearance or submitted to the jurisdiction of the court, in any other manner than as appears from the records as before stated.    If Isaac Davis had been the general agent of the defendants, they having no residence in the Commonwealth of Massachusetts, and there being no attachment of property upon the writ, they were in no way amenable to the jurisdiction of the court there.    But the return itself is sufficient to show that Davis held no relation to the defendants of general agent.

By the authorities to which reference has been made, the court which rendered the judgment now offered by the defendants, had no jurisdiction over them, and the proceedings are utterly void.    If it were otherwise, a person living in one State might be made conclusively liable for claims preferred against him in a court of a State the most distant from his residence, in which he had never been or had property, without notice or any opportunity to be heard in defence.    For such an absurdity, it is believed, that few advocates can be found.

But it is insisted, that the party who instituted those proceedings, who sought and obtained that judgment, should not be permitted to impeach it ; that they must be bound by it, notwithstanding it may be a nullity against the defendants.    In support of this view, the reasoning of the Court in the case of *Gleason* v. *Dodd, adm'r,* before referred to, is relied upon, but we think erroneously.    That was an action commenced by one Holbrook, who resided in Massachusetts, against Gleason, and after the action was entered in court in this State, the plaintiff died, his death was suggested upon the record, which avers that Dodd, the administrator, *came in.*    After several continuances, a nonsuit was entered, and judgment for costs allowed for the defendant.    A suit brought in Massachusetts upon that judgment was defended on the ground, that although Dodd was

administrator of the goods and estate of Holbrook, in Massachu-setts, yet he never took administration in this State, and never appeared himself to prosecute the suit against Gleason, or authorized any person to appear for him in any manner, and never submitted to the jurisdiction of the court. It was held, that in a common law action, whoever comes in and makes himself a party to a suit and to a record, and claims the benefit of the proceedings, and seeks the further action of the court, undoubtedly submits to the jurisdiction, and the court would have jurisdiction of the person of the administrator as such plaintiff, with power to render judgment against him, on failing to prosecute according to his undertaking. But he denied that he did ever submit to the jurisdiction of the court by coming in to prosecute. If he had made himself a party to the record, and a trial had been had, the defendant in the action could have availed himself of the want of qualification in the plaintiff, to appear and prosecute, but the plaintiff could not resist the effect of the judgment rendered against him, if he had in fact submitted to the jurisdiction; if such had been the facts, the court would have had jurisdiction of the parties upon the record, and a judgment would be good for both parties, in any State of the Union.

A valid judgment is a record of a court, having jurisdiction, which binds both parties. It is a sentence of the law, pronounced by the court upon the matter contained in the record. It is rendered, where the facts are confessed by the parties, and the law determined by the court; where the law is admitted, and the facts are disputed; where both the law and the fact are admitted by the defendant; and where the plaintiff abandons or withdraws his prosecution. 3 Black. Com. 395.

It cannot be a nullity as to one and valid as to the other party. Without jurisdiction, what purports to be a judgment, is not entitled to the name. There is no such thing as a judgment against a party over whom the court had no jurisdiction; consent of parties alone, can give no jurisdiction; and one taking a judgment of a court, against another not amenable thereto, has obtained nothing which affects him, more than

Argyle *v.* Dwinel.

would that, rendered by a tribunal having no jurisdiction, excepting what the parties themselves conferred. We have seen that the judgment could not be enforced against the defendants in this State, and to allow this defence to prevail, would be a perfect denial of justice to the plaintiffs, and render that which is entirely void and powerless against the defendants, to be a perfect immunity to them. The plaintiffs by instituting and prosecuting their suit in Massachusetts, after the defendants had removed from that Commonwealth, mistook their remedy so far as they could apply it in this State. The defendants have suffered nothing in consequence of the proceedings there, and not only the law, but justice requires that they should be holden in the present suit. By the agreement of the parties, a

*Default must be entered.*